## CONRAD TEN EYCK *versus* HENRY BERTHELET

"Apl & May 1826"

Woodbridge & Lanman, attorneys for plaintiff (1819).
Larned & Torrey, attorneys for plaintiff's assignee (1830).
Hunt & Larned, attorneys for defendant (1819).
Asa M. Robertson, attorney for defendant (1826).

[OPINION]

So far as regards the issuing of the fi: fa, on which a levy was made, and the property replevied by the Coronor, and the consequence growing out of that seizure, as operating as a satisfaction to the Judg$^t$ I do not consider it necessary at present

to give any opinion,— That point is new and depending wholly on a statute provision. At Com. Law, personal property was not repleviable, when taken upon execution. Therefore we cannot reasonably expect to derive much light from Law decisions, in aid of a question that may arise on the construction of that statute. Nor do I consider it necessary at this time, to decide on the legality of the $2^d$ fi. fa. which is said to have issued on said Judg$^t$. It is evident that Ten Eyck did not avail himself of that writ, so far as to satisfy his Judg$^t$ or any part thereof. The Judg$^t$ not being satisfied or discharged, Ten Eyck was entitled to a ca. sa. ag$^t$ Berthelet. Putting the Two first points out of the question, as I think they must be, on this application, It now follows to consider the $3^d$ & 4 points made by the Def$^t$. $3^d$ Ecp$^{tn}$ that the ca. sa issued irregularly to the sheriff of Monro, the venue in the action having been laid in Wayne County, and there being no testatum to warrant the issuing the ca sa to the sheriff of Monro. It is evident, that this exception to the regularity of the ca. sa. would be sustained by the Courts of Law in England. The authorities are numerous in the Books to this point. No ca. sa can regularly be directed to a sheriff of a different County, from the one where the venue is Laid, without first sueing out a writ in the County where the venue is Laid. A return is made or supposed to be made to the writ, that the def$^t$ is not found, and must be suggested as the ground of the $2^d$ writ. The same doctrine is said to prevail in N. York and I presume will be found to be adopted and practised on in most of the states of the Union. The rule is not an unmeaning & arbitrary one. It appears to me founded in justice and on Correct principles. Without entering into the various reasons, assigned by Lawyers, on this head, It is evident that that it was intended to protect the Def$^t$ against needless opression, and that he should not be thrown amongst strangers in his distress, and thereby be deprived of the aid and advice of his friends. That he should be prosecuted where his home was, if he had one, and not else where, unless he fraudulently absconded or avoided process.— Does the same law prevail in this Territory as in England & N. York? If so the ca. sa. in the present instance has issued irregularly.

By one of the provisions of the ordinance of 1787 the inhabitants of the Territory are guaranteed in their right to have judicial proceedings carried on and administered according to the course of the Common Law. This provision appears to me sufficiently broad to embrace the final process or execution as well as the first and mesne process leading to a Judg$^t$. The Judges of the Supreme Court are authorised to prescribe the forms of process, but not their use. Where statutes are wanting the Common Law prescribes the use.

There is another provision of the ordinance of 1787 that requires the Gov$^r$ of the Territory, for the purpose of executing process, civil and criminal, to Lay off such portions of the Ter$^y$ where the Indian title has been extinguished in to Counties, Townships &$^c$

There was an object to be attained in making this provision. The Gov$^r$ is required to lay out counties—and when laid out, the doctrine of venue, appears to me attaches,— A person prosecuted in the Supreme Court, who lives in a different County from the one where the Court sits, ought not to loose the Benefit of being tried by Jurors of his own County if he requires it. It is a Common law right & he ought not to be deprived of it.

As the venue in the action was laid in W. County The writ to the shff of Monro County should have been a testatum Capias. The fact of having issued a Ca Sa in Wayne County and of its proving ineffectual should have been suggested, in the execution to Monro. In practice it appears that both writs might have been issued

at the same time and a return of non est inventus, to the one to the shff of Wayne been immediately made—and in some instances such writ might have been taken out after the Levy of the Testatum. But the defect of the first writ is that it is not a testatum Capias—But a simple capias ad respondendum to the shff. of Monro. It is not suggested that the def$^t$ Berthelet Could not be found in Wayne. No enquiry to that effect is suggested, and no return of an officer intimated. I am therefore of the opinion that the ex$^n$ issued irregularly, and that it must be set aside. But I do not think that a single Judge at his Chambers has authority to supersede it or relieve the def$^t$. The application must be made in open Court to set aside the ex$^n$— and until that m$^o$ is made and granted it is a subsisting authority to the sheriff for detaining Berthelet. On the point of privilege— I do not think that a Judge can enforce it. It is the privilege of the Court and may be allowed or denied, according to circumstances. One Judge has not that discretion